## WALTER GOOD

*v.*

## ZIMRI FOGG.

PERSONAL PROPERTY—*exempt from execution.* Under the law of 1843, exempting personal property from levy and sale on execution, the person entitled to the benefits of the act may select a horse of less value than $60, under the clause allowing him property to that amount, suitable to his occupation and condition. Under the act of 1861, such person is entitled to hold, among other articles, a horse worth not exceeding $100, in addition

---

to the articles exempt under the law of 1843: *Held*, that a person entitled to the benefit of these exemptions, may hold, under both statutes, a horse worth not exceeding $160; that these acts are not to receive a strict construction, and that, according to their spirit, a person thus situated may, in his claim, unite both laws.

WRIT OF ERROR to the County Court of LaSalle county; the Hon. C. H. GILMAN, Judge, presiding.

Mr. FRANK CRAWFORD, and Messrs. McDONALD & WEDGWOOD, for the plaintiff in error.

Messrs. STIPP, BOWEN & SHEPHERD, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellant, in his argument, insists that the court below erred in giving appellee's first and second instructions, and in refusing appellant's eleventh. The question which they present is the construction of our statute which exempts personal property from levy and sale under an execution.

The first enactment was adopted in 1843, and was re-enacted in the Revised Statutes of 1845, ch. 57, sec. 33, and is still in force. The next is the act of 1861 (Sess. L. 121). The 33 section of chapter 57 declares that a number of articles of personal property shall be exempt from levy and sale on execution, naming them, and then declares that "$60 worth of other property, suited to his or her condition in life, to be selected by the debtor," shall also be exempt, when the debtor is the head of a family, and resides with them, etc.

The act of 1861 declares that, in addition to the property now exempt from levy and sale, the family pictures, school books and family library, household furniture of the value of $100, one yoke of oxen or one horse in lieu thereof, not exceeding $100 in value, with the harness therefor, and one plow and harrow, etc., shall be exempted.

The question arising is, whether a person, having no other property not exempt, suitable to his condition in life, but having a horse worth not more than $160, but more valuable than either exemption, may claim and hold the animal under both statutes.

It is apparent that the horse could not be claimed under either, as it was worth more than the sum named in each. Had it been worth no more than $60, it could have been claimed under either, as it would have fallen within the spirit, if not the letter, of each law.

A thing named in a statute is not within its provisions unless it be within the intention of the framers of the act. "In the exposition of a statute, then, the leading clue to the construction to be made, is the intention of the legislator, and that may be discovered from different signs. As a primary rule, it is to be collected from the words; when the words are not explicit, it is to be gathered from the occasion and necessity of the law, being the causes which led the legislature to enact it. But, in arriving at a conclusion from these premises, the greatest care and circumspection, and the exercise of the soundest judicial discretion, are required." Dwarris on Stat. 693.

Then, what was the occasion or necessity which moved the legislature to the adoption of these laws? It was the humane principle, that a creditor should not wholly deprive the husband and father of the means of supporting his family, usually helpless in themselves, and preventing them from becoming a public charge. Great Britain, and the various States of the Union, for this reason, have long had such enactments.

These statutes have not declared what shall be done in a case like the present, and we are left to ascertain the legislative intention, by inference or interpretation. Seeing the intention and purpose that actuated the legislature in adopting these acts, we can not doubt that had such a case occurred to them, they would have embraced it in the language of the law, because it is fully within its reason. Unless this claim

is sanctioned, then we find a person with property not within the letter of either, but within the spirit and reason of both acts, who could have no benefit from their enactment.

To hold that appellee can not claim this property, is to hold that he may be stripped of all the property of this class that the law-maker intended he should hold. To permit him to retain it, gives him the horse under the more recent statute, as it intended he should have, and it gives him, at the same time, the $60 worth suited to his condition in life, under the prior law; and, notwithstanding it is but one horse, it is within the reason of the law, and is permissible under these enactments.

It was held, in the case of *Cornelia* v. *Ellis*, 11 Ill. 584, the debtor might, under the clause authorizing him to select $60 worth of property, suitable to his condition in life, select and hold a horse of less than that value. From this, and other cases in our reports, it will be seen that the court has not been inclined to give these statutes a strict construction, but have endeavored to execute them according to the intention which actuated the legislature in their adoption.

Then, if a debtor may select and hold a horse not worth $60, under the former act, and another under the latter act worth not more than $100, why may he not hold one horse under both acts? The reason is the same in the one case as in the other.

This was the view taken of these statutes by the court below, in his instructions, and it was correct.

A careful examination of the evidence has failed to show us that it is not sufficient to sustain the verdict.

Seeing no error in this record, the judgment of the court below must be affirmed.

*Judgment affirmed.*