ASAD UDELL

V.

HENRY W. HOWARD.

*Exemptions—Sale under Execution—Double Damages—Verdict—Evidence.*

1. While a debtor may select articles amounting in value to the exemption to which he is entitled under the statute, he must offer to turn over the balance of his property to satisfy the execution; failing to do this, he can not recover the statutory penalty merely because his choice was not respected.

2. A finding of the court contrary to the decided weight of evidence, is good ground for reversal.

[Opinion filed December 8, 1888.]

APPEAL from the Circuit Court of McHenry County; the Hon. CHARLES KELLUM, Judge, presiding.

Mr. C. P. BARNES, for appellant.

Messrs. T. D. MURPHY and O. H. GILLMORE, for appellee.

LACEY, P. J.   This was an action in trespass brought by
the appellee to recover of the appellant the penalty under the
statute allowing damages for double the value of the property
sold, for selling the personal property of the appellee, which
he claims was exempt from levy and sale under execution.
The cause was tried by the court and resulted in the finding
of the court for the appellee in the sum of $400, and judgment
against appellant for that amount and costs.   From this judg-
ment this appeal is taken.

The court, in finding for the appellee the sum of $400, in-
cluded a part of the penalty claimed under the statute; for the
property sold, as shown by the evidence and claimed in the
declaration, to wit, 375 bushels of oats, two sets double har-
ness, one corn sheller and set Howe scales, one grindstone
and one pair bob sleighs, nine acres of corn and twenty-five
tons of hay, was worth only the sum of $325, as fixed by the
appraisers selected by the appellant, by his deputy, as sheriff,
under the statute, at the demand of appellee, and there is no
evidence that the property was worth more.

It appears from the pleadings and the evidence that the appel-
lant, as sheriff of McHenry county, held an execution issued
out of the Circuit Court of said county in favor of Charles
Herrington in the sum of $496 and costs against the appellee,
of date of August 20, 1884.

In October of 1884, the appellant's deputy went to appellee
and demanded property.   The appellee demanded his exemp-
tions under the statute and being a man of family, residing
with the same, he was entitled to his exemptions of $400.   It
seems that the sheriff had already levied on the articles in
question and possibly some others, before or at the time the
appraisers were selected and acted.

But the sheriff yielded to the demand for appraisal and
received the appellee's schedule and appointed the appraisers,
who fixed the value of all the property mentioned in the

schedule at near $1,300. There were horses, cows and such things that were not levied on at all, and left in the appellee's possession, of a value of more than $400.

It seems that the appellee had abundance of property to pay the debt and have the amount of his exemptions remaining, but it seems that he wanted to select the particular property the appellant had levied on and was about to advertise. It will be admitted that under the statute he had a right of choice and selection, provided he turned out or offered to turn out the balance of his property to the sheriff to satisfy the execution.

But where a penalty is sought to be enforced, as in this case, he must bring himself clearly within the provisions of the statute. Did the appellee do this? We think the evidence fails to show that he did. At the time the appraisal was made the appellant's deputy asked appellee what property he wanted to select for his exemption. The latter named over some of the articles that had been levied on till he had gotten about $400 worth and asked the deputy to give him enough oats to make up the balance.

The sheriff at the time thought he had no right to divide the bin of oats and the matter stopped there for that time. Howard did not at that time offer to turn out any other property in place of that he wanted to select, as we think the evidence shows.

It seems that all the property was left on the appellee's place, none of it being removed. Afterward, before the property in question was advertised for sale, the deputy sheriff, Eberle, in presence of C. Barnes, had a conversation with appellee at his horse barn about the exemptions.

The deputy told appellee that he had come down to see about his exemptions and see if he was ready to turn out the balance of the property in the schedule. As Barnes testified, appellee replied: "I am not prepared to do it now." The deputy sheriff replied he would have to do it then if at all, for he was going to post the notices for sale.

There was no one present but the deputy, Barnes and the appellee. The appellee testifies in regard to this conversation that Barnes and Eberle wanted to know if they would turn

out $400 to him if he would turn them out the balance of the property mentioned in the schedule? He said: "I told them I would turn them out what was outside of the mortgage and if I had a right to turn out the balance I would." This, according to his own statement, was an equivocation and equivalent to a refusal. Even if any of the property had been mortgaged, which the evidence does not disclose, the appellee had an interest in it subject to execution and he should have surrendered it or expressed himself willing to do so.

Who could decide whether he had a right to turn it out but himself? The appellee has not been stripped of all his property, but was left his $400, but not in the particular articles he claims he desired; a large portion of his debt has been paid by the sale, and when he seeks to recover a heavy penalty, merely because his choice has not been respected, he must, as we have before said, bring himself clearly within the provisions of the statute. He must be the actor and turn out or offer to turn out all his property not selected, thus bringing himself within the provisions of the statute. McMasters v. Alsop, 85 Ill. 157.

As to the claim which appellee sets up, that he offered to turn out the balance of his property at the time of the attempted selection when the appraisement was made, we can only say that the decided weight of the evidence seems to be against it; yet if he did, at that time, make such an offer, he must not afterward, before the property is delivered to him, withdraw it by refusing to do it or in doing what was equivalent to a refusal, as he did on the occasion of the last conversation.

Because the finding of the court is contrary to the decided weight of the evidence, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*